UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| COLIN L. MCDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 11-cv-433-JMH |
| v. | ) | |
| | ) | |
| WEBASTO ROOF SYSTEMS, INC., | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*

This matter is before the Court on the Motion for Summary Judgment [DE 23] of Webasto Roof Systems, Inc. ("Webasto"). Plaintiff McDonald has filed a Response, stating his objections [DE 24], and Defendant has filed a Reply [DE 25] in further support of its Motion. This motion is now ripe for resolution.

In his Complaint, Plaintiff avers that Defendant Webasto (1) violated the Americans with Disabilities Act ("ADA") when it refused to hire him because he was "regarded as" having a disability and unlawfully denied him employment on those grounds; (2) breached an agreement between the parties when it failed to provide him with employment as agreed; and (3) should be liable to him for damages under a theory of promissory estoppel because he left his former employment in reliance on Webasto's promise of employment. Webasto argues that Plaintiff's ADA claim fails because he was not a "qualified"

1

individual susceptible to the protections of the act and that there was no breach of contract because McDonald never accepted anything more than an "at will" offer of employment.  Further, argues Webasto, McDonald's promissory estoppel claim fails because "at will" employees may not seek relief under that theory in Kentucky.  For the reasons stated below, the Court concludes that McDonald's claims fail as a matter of law, and they shall be dismissed.

### I. Standard of Review

The Court may grant a motion for summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party must bear the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  That burden satisfied, the non-moving party must then produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The Court must review the evidence in the light most favorable to the non-moving party; however, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts."

2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Thus, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## II.   Background

McDonald applied for a job with Webasto on March 4, 2011. Webasto interviewed McDonald on March 7, 2011, and, through its agent, Liz Beatty, offered him a position as a maintenance technician.[1]   McDonald contends that—at least initially—the position was offered without condition and that he was asked if he could start immediately.   He advised Webasto that his employer at that time, Washington Penn, required two weeks' notice.   While most new employees received written notice, congratulating them on their position, notifying them of orientation and the necessity of completing a pre-employment

---

[1] The Court recounts the evidence in the light most favorable to McDonald as the non-moving party in this instance. *See* Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

physical, and requiring a signature acknowledging receipt, Plaintiff never received such a document, and Webasto never obtained an acknowledgement from McDonald.

McDonald gave a two week notice to Washington Penn on March 7, 2011. One week later, Liz Beatty called and asked McDonald to submit to a drug test, a criminal background check, and a physical before commencing work. McDonald agreed to do so. On March 10, 2011, McDonald appeared at Red Point Medical for a medical examination. Heather Pile, who administered the exam for Red Point, performed a complete physical examination of McDonald. While there is some disagreement about the detail with which it was presented, McDonald reported a preexisting degenerative disc condition, which Piles took into consideration when she performed the exam and evaluation. She had been furnished a description of the necessary job functions by Webasto and found no limitations for McDonald. She gave deference to a statement provided by Dr. Lyon, an orthopedist, who placed no restrictions on McDonald. Ultimately, she concluded that McDonald could "perform the essential job functions" and that, with respect to "Hx lumbar bulging dics [*sic*] – PCP Dr. Lyon states no restrictions needed." On March 21, 2011, Beatty called Pile. Pile made a note concerning the call, indicating that "We [Red Point Medical] have no specific reason to states [*sic*] Mr. McDonald cannot do the job. If there

4

are concerns, a Fit for Duty with Dr. Lester can be required. . . ."

Beatty then referred McDonald to the Kentucky Back Center, where he was examined on March 23, 2011. There, McDonald underwent functional capacity tests. He "passed" the functional capacity and physical elements of the tests, meeting the physical requirements of the position description provided by Webasto – including the handwritten requirements added to the position description by Beatty before it was provided to the Kentucky Back Center. McDonald was asked by Kentucky Back Center to provide certain medical records, which McDonald did. Among those records were contradictory opinions as to whether McDonald was a surgical candidate for correction of his degenerative disc condition. Dr. William Lester of the Kentucky Back Center, who did not examine McDonald, meet McDonald, or inquire of McDonald about his work experiences or present physical condition, ultimately prepared the Kentucky Back Center's report to Webasto based on his review of the records and his consultation with the advanced registered nurse practitioner who did the examination. He concluded in this report that "[he] would not recommend that [McDonald] work within the job description provided." [DE 23-2, Page ID # 117.] Lester later testified that, while McDonald could lift "what we required him to lift at that time" he was examined, Lester "did

not feel, based upon the records that I reviewed, that he could perform those jobs on a sustained level." [DE 24-8 at 9, Page ID # 227]   Lester, during his deposition, testified as though he was unaware that McDonald had been released from work or lifting restrictions and testified that he had not received any records indicating that at least one physician had opined that McDonald was not a surgical candidate to correct the condition.  [DE 24-8 at 5-6, Page ID ## 223-24.]

In fact, work restrictions were imposed at Washington Penn as a result of McDonald's back condition during his tenure there.  However, while he worked on a light duty restriction for a time, those restrictions were lifted once McDonald passed a four to five hour functional capacity test.  Further, there is evidence that McDonald performed duties that were far more strenuous than those included in the Webasto job description during his employment at Washington Penn.  Additionally, McDonald commenced employment at Toyota Engineering and Maintenance Manufacturing on August 1, 2011, where his duties require him to perform strenuous activities equal to those he performed at Washington Penn and equal to or greater than those included in the Webasto job description.

**III. Analysis**

    **A. Plaintiff's Claim Under the Americans With Disabilities Act**

The Americans with Disabilities Act ("ADA"), as amended, prohibits discrimination by certain employers against "a qualified individual on the basis of disability in regard to. . . . the hiring. . . or discharge of employees. . .and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires" and which also means that the individual "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position."  *Id.* at § 12111(8); 29 C.F.R. § 1630.2(m).

"Disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. . . ."  42 U.S.C. § 12102(1).  "An individual meets the requirement of 'being regarded as having such impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment

7

limits or is perceived to limit a major life activity." *Id*. at § 12102(3)(A).

Employers subject to the provisions of the ADA "may make pre-employment inquiries into the ability of an applicant to perform job-related functions, and/or may ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform job-related functions." 29 C.F.R. § 1630.14(a). Further, such employers "may require a medical examination (and/or inquiry) after making an offer of employment to a job applicant and before the applicant begins his or her employment duties, and may condition an offer of employment on the results of such examination (and/or inquiry), if all entering employees in the same job category are subjected to such an examination (and/or inquiry) regardless of disability." *Id*. at § 1630.14(b).

29 CFR § 1630.14(b)(3) contains specific limitations on the scope of such medical examinations:

> Medical examinations conducted in accordance with this section do not have to be job-related and consistent with business necessity. However, if certain criteria are used to screen out an employee or employees with disabilities as a result of such an examination or inquiry, the exclusionary criteria must be job-related and consistent with business necessity, and performance of the essential job functions cannot be accomplished with reasonable accommodation as required in this part.

In the absence of direct evidence of disability discrimination, as in the case before the Court, "[a] plaintiff may prove employment discrimination under the ADA . . . on circumstantial evidence, using the prima facie case and burden shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248. . . (1981)." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (citing *Wooten v. Farmland Foods*, 58 F.3d 382 (8th Cir. 1995); *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793 (7th Cir. 1995); *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995)).  Thus, Plaintiff

> . . . must first establish a prima facie case of discrimination that will create a presumption of unlawful discrimination. Once the plaintiff has made a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. Once the employer has come forward with a nondiscriminatory reason for firing [or not hiring] the plaintiff, the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.

*Id*. at n. 5 (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

In the matter before it, the Court concludes that Plaintiff could make a prima facie case of unlawful discrimination.

9

McDonald can arguably establish that (1) he is a disabled person within the meaning of the ADA because Webasto perceived him as having an impairment due to degenerative disc disease and (2) that he is actually qualified for the position of maintenance technician because, with or without reasonable accommodation, he is able to perform the essential functions of the job. What is most troubling is the question of whether Webasto did not hire him because of that perceived disability because, in fact, the evidence shows that Webasto actually believed that he was not qualified for the position. *Id.* at 104 (citing *White,* 45 F.3d at 360-61).

This reality is, perhaps, better analyzed by assuming that Webasto did not hire him due to his perceived disability (whether Webasto knew that was what it was doing or not) and proceeding to consider Webasto's explanation at the next stage of the prescribed analysis. Defendant Webasto has come forward with a legitimate, nondiscriminatory reason for not hiring him: it concluded that he was not qualified based on the results of the examination at the Kentucky Back Center as reported by Dr. Lester and which stated that McDonald could not perform the work required in the position for which he had been hired.

Unfortunately for Plaintiff, he has not provided evidence from which a jury might reasonably reject Webasto's explanation beyond his conclusory assertion that Webasto sought to reach the

10

conclusion that he was disabled because it required him to undergo a second medical examination after the first one revealed that he had a history of degenerative disc disease but was, in the opinion of the health care provider performing that examination, able to perform the essential job functions. That fact, alone, is not evidence that Webasto was shopping for a particular opinion or sought anything more than an evaluation of his ability to perform the work required in the position offered. McDonald does not dispute that Webasto could rightfully require and even condition his employment on the results of a medical examination. Nor does McDonald suggest that the physical requirements contained in Webasto's position description, against which his ability to perform job-related functions was measured, were anything other than job-related and consistent with business necessity. He has provided the Court with no citation to relevant statute, regulation, or caselaw to support his argument that an employer cannot seek a second opinion or that its pre-employment inquiry is per se limited once an initial evaluation is received. Nor has the Court, through its own research, found any law which would support this argument.

Looking at all of the evidence in the light most favorable to Plaintiff, the Court agrees that, with hindsight, a reasonable juror could conclude that "Dr. Lester's opinions are

premised on what the future might hold for Colin McDonald and his degenerative disc condition, not the evidence before him. . . ." as Plaintiff argues.  [Response to MSJ, DE 24 at 12, Page ID # 190.]   That does not change the fact that Lester simply communicated to Webasto that Plaintiff could not perform the duties of the job for which he was to be employed.  If Dr. Lester's conclusion was in error, that error is entirely attributable to Dr. Lester and not to Webasto.  McDonald has failed to present any evidence whatsoever which indicates that Webasto had an obligation to look behind Lester's conclusion or that it based its decision not to employ Plaintiff on any factor other than the report made by Dr. Lester in which he concluded that Plaintiff was unable to perform the job duties essential to the position for which he applied.  It follows that Plaintiff's claim of disability discrimination under the ADA fails as a matter of law.

**B. Plaintiff's Breach of Contract and Promissory Estoppel Claims**

In the Commonwealth of Kentucky, "a contract for permanent employment which is not supported by any consideration other than the obligation of services to be performed on the one hand and wages to be paid on the other is a contract for an indefinite period, and, as such, is terminable at the will of either party." *Edwards v. Ky. Utils. Co.,* 150 S.W.2d 916, 917–

18 (Ky. 1941).  Where there is no clearly manifested intent to alter an employee's employment status from at-will to one where he could only be terminated for cause, the default employment relationship is "at will."  *See Street v. U.S. Corrugated, Inc.*, No. 1:08-cv-00153, 2011 WL 304568, at *5 (W.D. Ky. Jan. 25, 2011) ("Absent a clear statement not to terminate without cause, the assumption is that the parties intended to enter into an ordinary employment relationship, terminable at the will of either party.") (citations omitted).  Absent a specific contractual provision stating that discharge may only be done for cause, "an employer may ordinarily discharge an employee 'for good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Miracle v. Bell Co. Emergency Med. Svcs.*, 237 S.W.3d 555, 558 (Ky. Ct. App. 2007) (citations omitted); *see also Mayo v. Owen Healthcare, Inc.*, Nos. 99-5477, 99-5560, 2000 WL 1234359, at *2 (6th Cir. Aug. 24, 2000) (interpreting Kentucky law as holding "employment is 'at will' unless the parties otherwise agree").  Here, no written employment contract exists, nor is there evidence that Plaintiff was made or accepted an offer of employment on any terms other than "at-will."  Thus, the decision not to employ Plaintiff was reserved to Defendant, and there can be no breach of contract on the facts before this Court.

13

Further, an at-will employee cannot assert a promissory estoppel claim against an employer. *See Louisville & Nashville R.R. Co. v. Wells,* 160 S.W.2d 16, 18 (Ky. 1942) (holding that an aspiring employee cannot sue for lost wages on an unfulfilled promise of at-will employment); *Jackson v. JB Hunt Transp., Inc.,* 384 S.W.3d 177 (Ky. Ct. App. 2012) (holding that an at-will employee has no employment security to begin with, and therefore cannot give up any such employment security in reliance on the employer). Accordingly, on the facts of this case, Plaintiff's promissory estoppel claim fails as a matter of law.

**IV. Conclusion**

For all of the reasons set forth in this memorandum opinion and order, Plaintiff's claims fail as a matter of law, and summary judgment in favor of Defendant is appropriate.

Accordingly, **IT IS ORDERED** that Webasto's Motion for Summary Judgment [DE 23] is **GRANTED.**

This the 18th day of October, 2013.



Signed By:

***Joseph M. Hood***

**Senior U.S. District Judge**