<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 14a0457n.06

Case No. 13-6375

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
*Jun 25, 2014*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| COLIN L. McDONALD, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| | ) THE EASTERN DISTRICT OF |
| WEBASTO ROOF SYSTEMS, INC., | ) KENTUCKY |
| | ) |
| Defendant-Appellee. | ) |

BEFORE:  ROGERS and COOK, Circuit Judges; MURPHY, District Judge.[*]

PER CURIAM.  Webasto Roof Systems, Inc. rescinded its offer to employ Colin McDonald as a maintenance technician after a second pre-employment medical examination revealed a history of back injuries and a doctor opined that he "would not recommend that [McDonald] work within the job description provided."  McDonald sued, claiming that Webasto violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by refusing to hire him because of his perceived impairments, and advancing state-law claims for breach of contract and promissory estoppel.  The district court granted summary judgment to Webasto on all claims, concluding that (1) Webasto proffered a legitimate, non-pretextual reason for not hiring McDonald, in that the expert believed that McDonald could not fulfill the requirements of

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

Case No. 13-6375
*McDonald v. Webasto Roof Systems, Inc.*

the position; and (2) no evidence established that McDonald had anything other than an at-will employment relationship with Webasto, dooming his state law claims. McDonald appeals. After carefully reviewing the record, the applicable law, and the parties' briefs, we find that the district court's opinion correctly sets out the undisputed facts and governing law. We AFFIRM on the basis of its well-reasoned opinion with these additional comments.

On appeal, McDonald first insists that Webasto violated the ADA by conducting more than one pre-employment medical examination, citing the regulation that refers to "medical examination" in the singular. *See* 29 C.F.R. § 1630.14(b). Elsewhere, though, the regulation refers to "[m]edical examinations" in the plural. 29 C.F.R. § 1630.14(b)(3). More saliently, McDonald cites no authority interpreting the ADA to prohibit more than one pre-employment medical examination. EEOC guidance expressly provides that an employer may request "more medical information . . . if the *follow-up examinations* or questions are medically related to the previously obtained medical information." *ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations* at 19, http://www.eeoc.gov/policy/docs/medfin5.pdf (emphasis added). Our precedent holds that EEOC guidance constitutes "very persuasive authority in questions of statutory interpretation of the ADA." *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 815 (6th Cir. 2012) (internal quotation marks omitted). Webasto required a second medical examination only after the first revealed a history of "[l]umbar bulging discs."

McDonald next contends that Webasto violated the ADA by impermissibly relying on the opinion of the reporting doctor, Dr. Lester, under the "justification" prong of the familiar *McDonnell Douglas* burden-shifting framework for employment discrimination claims. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (explaining that, once a plaintiff

Case No. 13-6375
*McDonald v. Webasto Roof Systems, Inc.*

proves a prima facie case of discrimination, the defendant must "articulate some legitimate, non-discriminatory reason for the employee's rejection"). According to McDonald, Dr. Lester's opinion should not be credited because it "does not opine as to whether or not [he] could perform the job duties required." McDonald also faults the district court for "convert[ing] Dr. Lester's vague opinion [in]to an actual response as to whether McDonald could perform the essential job functions."

Dr. Lester expressly recommended against hiring McDonald to "work *within the job description provided*." (R. 23-2, Lester Letter, ID 117 (emphasis added).) The job description sets forth the "Princip[al] Duties and Responsibilities" of the position and the "Knowledge, Skills and Abilities Required." And Dr. Lester clarified during his deposition that, in light of McDonald's history of back problems, "[he] did not feel . . . that [McDonald] could perform those job[] [duties] on a sustained level." The district court thus reasonably concluded that Dr. Lester's report to Webasto amounted to an opinion that McDonald could not perform the essential duties of the maintenance technician position—a legitimate, non-discriminatory reason to rescind the offer to place him in that job. *See* 29 C.F.R. § 1630.14(b)(3) (providing that an employer may use medical examinations to "screen out" job applicants so long as "the exclusionary criteria [are] job-related and consistent with business necessity").

McDonald points us to the favorable results of his first examination that concluded he could perform the essential job functions. He also notes that he successfully performed the physical tasks during his follow-up examination. True enough. But Dr. Lester concluded that McDonald could not perform the job duties "on an ongoing basis" because of "his history of having herniated discs" and the fact that, during his previous employment as a maintenance

Case No. 13-6375
*McDonald v. Webasto Roof Systems, Inc.*

technician, McDonald "asked for restrictions . . . of no lifting more than 30 pounds, and avoid[ing] repetitive bending and twisting of his back."

In any event, McDonald offers no evidence that Webasto's reliance on Dr. Lester's opinion "was in fact a pretext designed to mask discriminatory intent." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 521 (6th Cir. 1998). "Even if the . . . medical opinions were demonstrably flawed, [the employer's] reasonable reliance upon them is not discriminatory." *Crocker v. Runyon*, 207 F.3d 314, 319 (6th Cir. 2000) (affirming grant of summary judgment to employer in analogous Rehabilitation Act case). "So long as the [employer] relied on those [doctors'] opinions in good faith in determining that [the plaintiff] could not do the job, the failure to hire him was justified." *Id.*; *see also Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437, 443 (6th Cir. 1991) ("What is relevant is that [the employer], in fact, acted on its good faith belief about plaintiff's condition based on [the doctor's] opinion, and . . . there is no proof to the contrary.") (collecting cases). As the district court observed, McDonald offers no evidence that Webasto relied on Dr. Lester's opinion in bad faith when deciding to withdraw its offer of employment. Rather, McDonald argues that Webasto acted in bad faith by "shopping" for a second, adverse opinion. But, as explained above, EEOC guidance condones follow-up examinations when the first reveals pertinent medical concerns.

Last, McDonald claims that the district court erred in granting judgment to Webasto on his state-law claims for breach of contract and promissory estoppel. But Kentucky law presumes an at-will employment relationship "unless the parties otherwise agree," *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 98 (Ky. Ct. App. 2000), and "ordinarily an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally

Case No. 13-6375
*McDonald v. Webasto Roof Systems, Inc.*

indefensible," *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983).[1] Without evidence of an employment contract with Webasto, McDonald's breach of contract claim fails. Likewise, his at-will status precludes his promissory estoppel claim. *See Jackson v. JB Hunt Transp., Inc.*, 384 S.W.3d 177, 185 (Ky. Ct. App. 2012) (rejecting at-will employee's promissory estoppel claim grounded on his alleged wrongful termination because "as an at-will employee, he had no employment security to begin with").

We AFFIRM.

---

[1] McDonald suggests, without citation to any authority, that "[t]he 'at-will doctrine' does not permit termination of a protected employee for any illegal reason." Kentucky recognizes a narrow public-policy exception to the terminable-at-will doctrine. *See Grzyb v. Evans*, 700 S.W.2d 399, 400–01 (Ky. 1985); *Murphy v. Cockrell*, 505 F.3d 446, 455 (6th Cir. 2007). The Kentucky Supreme Court, however, declined to extend this exception to cases of alleged disability discrimination where the worker fails to prove a valid discrimination claim. *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 199 (Ky. 2001).